WILLIAMS LAW FIRM, P.C.
Nicholas J. Pagnotta, Esq.
Alexander T. Tsomaya, Esq.
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350 Fax: (406) 721-6037
nick@wmslaw.com
alex@wmslaw.com
*Attorneys for Defendant*
*United Fire and Casualty Co.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| SWANK ENTERPRISES, INC., | CV-19-179-M-DWM |
| Plaintiff, | |
| -vs- | **UNITED FIRE AND CASUALTY COMPANY'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |
| UNITED FIRE AND CASUALTY COMPANY (d/b/a UNITED FIRE GROUP) and JOHN DOES 1-10, | |
| Defendants. | |

## TABLE OF CONTENTS

I.INTRODUCTION…………………………………………………6

II.FACTUAL BACKGROUND……………………………..…....7

    A.     The Parties, Underlying Construction Project, and
Certificate of Insurance……………………………………7

    B.     The Underlying Cases…………………………………9

    C.     United Fire's Policy
Language……………………………………….…………10

          1. Additional insured
endorsements………………………………………….11

          2. The words "you" and "your" refer to the named
insured, T&L……………………………………….14

          3. Other provisions………………………………….15

III.STANDARD OF REVIEW…………………………………15

IV.ARGUMENT……………………………………………16

    A. Swank Is Not An Additional Insured………………...16

          1. Swank's burden and the duty to defend……...….16

          2. Swank does not qualify for additional insured
status because the underlying cases do not impute
T&L's liability to Swank……………………………17

          3. Swank's supportive case, and others like it, did not
address theimputed liability scenario here……….…27

          4. Swank's legal conclusions regarding the
Subcontract and Certificate do not manufacture
additional insured status……………………………29

5. Swank's answers and defenses are also irrelevant..................................................31

B. The Policy's Total Pollution Exclusion Precludes Coverage................................................................32

1. "Chemicals contained in the modified polyamine epoxies" are "pollutants"..................................35

2. The remainder of the exclusion precludes coverage..........................................................36

V.CONCLUSION..........................................................39

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................... 15, 16, 29

*Asurion Servs., LLC v. Mont. Ins. Guar. Ass'n*, 396 P.3d 140 (Mont. 2017)... 20

*Associated Dermatology & Skin Cancer Clinic of Helena v. Mt. W. Farm Bureau Mut. Ins. Co.*, 389 P.3d 1027 (Mont. 2017) ..................................... 38

*Auto. Club Ins. Co. v. Toyota Motor Sales*, 531 P.2d 1337 (Mont. 1975) ........ 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................*passim*

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ................ 15

*Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).............39

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) ........................... 7

*F.H. Stoltze Land & Lumber Co. v. Am. States Ins. Co.*, 352 P.3d 612 (Mont. 2015). ..................................................................................*passim*

*Farmers Ins. Exch. v. Green*, Cause No.: 17-1456 (Mont. Dist. Ct. Jan. 29, 2019) ................................................................................ 30

*Fire Ins. Exch. v. Weitzel*, 371 P.3d 457 (Mont. 2016).............................*passim*

*Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779 (E.D. Va. 2007). ...................................................................................*passim*

*Graham Constr., Inc. v. Markel Am. Ins., Co.*, 180 F. Supp. 3d 626 (D. Neb. 2016) .................................................................................................. 19

*Lloyd A. Twite Family P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156 (Mont. 2008) ..................................................................................................... 17

*Madison v. Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999). ................................................................................................................ 39

*Mid-Century Ins. Co. v. Windfall, Inc.*, No. CV 15-146-M-DLC, 2016 U.S. Dist. LEXIS 67482, at *9 (D. Mont. May 23, 2016)................................................ 31

*Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 174 P.3d 948 (Mont. 2008) ......................................................................................... 32, 37

*Plum Creek Mktg. v. Am. Econ. Ins. Co.*, 214 P.3d 1238 (Mont. 2009) ....*passim*

*R.H. Grover, Inc. v. Flynn Ins. Co.*, 777 P.2d 338 (Mont. 1989) ..................... 30

*Seal v. Hart*, 50 P.3d 522 (Mont. 2002)............................................................ 30

*Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005).........................39

*SLA Prop. Mgmt. v. Angelina Cas. Co.*, 856 F.2d 69 (8th Cir. 1988).............. 31

*Sherris v. N. Pac. Ry.*, 175 P. 269 (Mont. 1918) ............................................. 20

*Sokoloski v. Am. W. Ins. Co.*, 980 P.2d 1043 (Mont. 1999). ................. 32, 36, 37

*St. Paul Fire & Marine Ins. Co. v. Tyler*, 974 P.2d 611 (Kan. App. 1999)...... 21

*Stat-Tech Liquidating Tr. v. Fenster*, 981 F. Supp. 1325 (D. Colo. 1997) ...... 21

*State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48 (Mont. 2013) ................. 31

*T.H.E. Ins. Co. v. City of Alton*, 227 F.3d 802 (7th Cir. 2000) ........................ 31

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010) ........................ 29

*Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 108 P.3d 469 (Mont. 2005) ...................................................................................... 17, 32

*United Fire & Cas. Co. v. Gethmann Constr. Co.*, 872 N.W.2d 409 (Iowa Ct. App. 2015)...................................................................................... 23, 24

*WBI Energy Transmission, Inc. v. Colony Ins. Co.*, 56 F. Supp. 3d 1194 (D. Mont. 2014)....................................................................... 16, 17, 28

**STATUTES**

Mont. Code Ann. § 39-71-411 ...................................................................*passim*

Mont. Code Ann. § 61-5-108 ............................................................................ 20

**OTHER AUTHORITIES**

13A Appleman, *Insurance Law and Practice* § 7530 (1976 and Supp. 1997)..30

Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/imputed (accessed Dec. 5, 2019) ...................... 19, 20

*The New Oxford American Dictionary* 482 (2d ed. Oxford Univ. Press 2005)…35

*Webster's New Universal Unabridged Dictionary* 561 (2003)…………..………35

**RULES**

Fed. R. Civ. P. 12(b)(6)………………………………………..………………7, 15, 16

Fed. R. Civ. P. 12(c) ............................................................................. 7, 15, 16

## I.   INTRODUCTION

Plaintiff Swank Enterprises, Inc. seeks additional insured status under a policy United Fire & Casualty Company issued T&L Painting, Inc. Swank subcontracted with T&L for a construction project in Butte. While the project was ongoing, two T&L employees allege they were "exposed to chemicals contained in modified polyamine epoxies[.]" They sued Swank and the epoxy manufacturer for negligence. Swank, in turn, brought this action. The Court should dismiss it on the pleadings, when comparing the underlying complaints to the policy language, for two reasons.

*First*, Swank does not and cannot qualify as an additional insured. The relevant policy language provides additional insured status "only with respect to [T&L's] liability" for damages "which may be imputed" to Swank. But the underlying complaints make no allegations imputing T&L's liability to Swank—T&L is not even a named defendant. That's for good reason. The Workers' Compensation Act (WCA) mandates T&L "is not subject to any liability whatever" for its employees' negligence claims. Mont. Code Ann. § 39-71-411. So it would be impossible to impute T&L's liability onto Swank. That is dispositive of this case.

*Second*, the Total Pollution Exclusion precludes coverage. The policy language defines "pollutants" as "irritant[s] or contaminant[s], including . . . chemicals." The "chemicals contained in modified polyamine epoxies" are "pollutants." And the plaintiffs allege their bodies were exposed to these "pollutants," implicating the exclusion.

## II.    FACTUAL BACKGROUND

### A.    The    Parties,    Underlying    Construction Project, and Certificate of Insurance

"Swank was the general contractor for a construction project" at a water treatment plant in Butte. Doc. 1, Compl., at ¶ 6. Swank subcontracted with T&L to perform certain work. *Id.* at ¶ 8. They executed the "Standard Form of Agreement Between Contractor and Subcontractor" on July 29, 2014. **Ex. A**, Subcontract, at 1, 3.[1] Swank alleges T&L "was responsible for applying various coatings at the [p]roject." *Id.* at ¶ 7. Section 9.2.11.1.1 required T&L name Swank as an "additional insured" for certain circumstances. Subcontract, at 22; *see* Compl., at ¶ 9.

---

[1] The complaint incorporates documents by reference properly considered. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint[.]") As shown *infra*, the Rule 12(c) and 12(b)'s standards are the "same."

United Fire insured T&L, Compl., at ¶ 8, under Policy #60414311, Commercial General Liability Policy (the Policy), and subject to the Policy's terms, conditions, and endorsements, *see* Doc. 5-1 (Policy). The Policy was in place from May 15, 2015, to May 15, 2016. *Id.* at Declarations (2/127).

"Swank obtained a certificate of insurance[.]" Compl., at ¶ 9; *see* **Ex. B**, Certificate of Liability Insurance (Certificate). Cogswell Insurance Agency LLC produced the Certificate. *Id.* The Certificate identifies Swank as the "Certificate Holder." *Id.*

The one-page Certificate told Swank it was "**ISSUED AS MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER**." *Id.* It further informed Swank:

> **\*\*\*\* THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.**
>
> _____
>
> **IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be**

**endorsed. \*\*\* A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).**

*Id.*

Swank is *not* listed on the Policy's "Schedule of Additional Insureds." Policy, at (4/127).

### B.   The Underlying Cases

The underlying actions are "*Ball v. Swank Enterprises et al.*, DDV–18–0313 (Mont. 8th Jud. Dist.) and *Lewis v. Swank Enterprises et al.*, DDV–18–0405 (Mont. 8th Jud. Dist.)." Compl., at ¶ 11; *see* Doc. 1-1 (Underlying Cases). Plaintiffs Ronald Ball and Jeremy Lewis, two T&L employees, claim injuries from working on the project. Doc. 1-1, Underlying Cases, at ¶ 8[2]. They allege being "exposed to chemicals contained in modified polyamine epoxies ('the exposure')" caused them "severe[] injur[ies]." *Id.* at ¶¶ 5-6. They contend "[t]he exposure occurred as [they] . . . applied the [e]poxies to large tanks incorporated into the [p]roject." *Id.* at ¶ 14. The epoxies, they assert, "present[ed] health risks, including skin corrosion and sensitization." *Id.* at ¶ 15.

---

[2] We cite the complaints collectively where the allegations are identical.

Ball and Lewis posit Swank and Tnemec Company, Inc. are liable. *See generally id.* Ball and Lewis did not and could not sue their employer, T&L, given the WCA, Compl., at ¶ 20. We summarize their claims below.

Swank was "the general contractor for the [p]roject." Underlying Cases, at ¶ 9. Ball's and Lewis's claims against Swank stem from this role. *Id.* at ¶ 10. They invoke duties Swank owed them—and allegedly breached—as a general contractor under Montana Code Annotated § 50-71-201. *Id.* at ¶¶ 10, 12. Ball and Lewis argue the hazardous epoxies were used with Swank's "knowledge and approval." *Id.* at ¶ 14. Their case against Tnemec, an epoxy manufacturer and distributor, alleges it failed to properly instruct and advise them. *Id.* at ¶¶ 13, 17.

Ball and Lewis assert negligence theories against Swank and Tnemec. *See id.* at p. 4. Ball and Lewis do not allege T&L was negligent or acted wrongfully. *See id.*

### C.  United Fire's Policy Language

Swank did not purchase the Policy and is not listed on the Declarations. Policy, at (1-4/127). It therefore does not qualify as an insured under the Policy's general definitions. *See id.* at (14-15/127) ("**SECTION II – WHO IS AN INSURED**"). Swank alleges it qualifies as

an "additional insured."

## 1.   Additional insured endorsements

The Policy contains four additional insured endorsements. Two endorsements are irrelevant, though, as Swank is not scheduled. *See* Policy, at (36/127) (Endorsement CG 71 31 02 15 "include[s] as an additional insured the person(s) or organization(s) ***shown in the Schedule***[,]" subject to additional requirements); *id.* at (101/127) (Endorsement CG 20 11 04 13 "include[s] as an additional insured the person(s) or organization(s) ***shown in the Schedule***" when involving "premises leased" to T&L that are "***shown in the Schedule***[,]" and subject to additional requirements). Swank, again, is not scheduled. Policy, at (4, 36, 101/127).

Two endorsements do not require the party seeking additional insured status be scheduled. But initially these endorsements provide additional insured status "only" where T&L's "liability" is "imputed" to the party seeking it.

### (a)   *Endorsement CG 71 50 02 15*

First is Endorsement CG 71 50 02 15. Policy, at (37/127). It provides, in relevant part:

**CONTRACTORS BLANKET ADDITIONAL INSURED - LIMITED PRODUCTS – COMPLETED OPERATIONS COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Terms and provisions of this endorsement shall supersede any inconsistent language in any other coverage form

1. **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement *** [subject to certain requirements]

    ****

    **B.** The additional insured status will apply ***only with respect to your liability*** for "bodily injury" or "property damage" ***which may be imputed*** to that person(s) or organization(s) directly arising out of "your work" at the location designated and described in the written contract or written agreement performed for that additional insured and only for that liability included in the "products-completed operations hazard".

    ****

*Id.* (emphasis added). Note this endorsement also limits additional insured status to exposures within T&L's "completed operations," and work was ongoing during the alleged exposure. Policy, at (20/127) (defining "products-completed operations hazard"). While dispositive, the

Court need not reach this requirement given imputed liability is not at issue.

### (b)   Endorsement CG 71 51 02 15

Second is Endorsement CG 71 51 02 15. Policy, at (39/127). It contains the identical "liability . . . which may be imputed" requirement:

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**BROADENED LIABILITY PLUS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

\*\*\*\*

<u>**SECTION II – WHO IS AN INSURED**</u>

\*\*\*\*

**5. Additional Insured - Owners, Lessees or Contractors - Automatic Status When Required in Construction or Service Agreement With You**

**a.** Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy is an insured. Such person or organization is an additional insured *only with respect to your liability* for

"bodily injury", "property damage" or "personal and advertising injury" ***which may be imputed*** to that person or organization directly arising out of:

> **1.** Your acts or omissions; or

> **2.** The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

> **\*\*\*\***

*Id.* at (42/127) (italics added).

## 2.   The words "you" and "your" refer to the named insured, T&L

The endorsements have defined words. The definition of "you" and "your" is important. It means the named insured, T&L. The Policy states:

**COMMERCIAL GENERAL LIABILITY FORM**

> **\*\*\*\***

> Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.**\*\*\*\***

*Id.* at (6/127). The Declarations list T&L as the only "NAMED INSURED":

```
ACCOUNT NUMBER:3000211945    (2) COMMERCIAL GENERAL LIABILITY
   DIRECT BILL -              COMMERCIAL GENERAL LIABILITY COVERAGE PART
ISSUE DATE 05-17-2015 CM  REPLACEMENT OF 0104   60414311  DECLARATIONS RENEWAL EXTENSION
  NAMED T&L PAINTING INC                    AGENCY & CODE   740083
 INSURED                                    COGSWELL INS AGENCY LLC
    AND                                     PO BOX 2009
 MAILING 509 COLORADO AVE NW
 ADDRESS GREAT FALLS          MT 59404-1367 GREAT FALLS MT          59403
  POLICY  12:01 A.M. Standard time FROM:  05-15-2015  TO:  05-15-2016
  PERIOD: at your mailing address shown above.        And for successive policy periods as stated below.
```

*Id.*

### 3.  Other provisions

Other provisions, including the Total Pollution Exclusion, are quoted below where discussed.

## III.   STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Ninth Circuit holds that "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (collecting cases). This implicates *Twombly* and *Iqbal*'s standard. *See id.*

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do[,]'" *id.* and is subject to a motion to dismiss. To survive a Rule12(b)(6) motion, plaintiffs must have "nudged their claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Iqbal* explains a two-part test applies. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).

## IV.   ARGUMENT

United Fire has no duty to defend Swank for two reasons. First, Swank is not an additional insured under the Policy. Second, the Policy's Total Pollution Exclusion precludes coverage.

### A.   Swank Is Not An Additional Insured

#### 1.   Swank's burden and the duty to defend

Swank "bears the initial burden to establish that the claim falls within the basic scope of coverage," *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461 (Mont. 2016), including showing additional insured status, *WBI Energy Transmission, Inc. v. Colony Ins. Co.*, 56 F. Supp. 3d 1194, 1197

(D. Mont. 2014).

This analysis implicates the Policy in conjunction with Ball's and Lewis's complaints. For whether a defense is owed "is determined by the language of the insurance policy." *Lloyd A. Twite Family P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1158 (Mont. 2008). And "an insurer has a duty to defend 'when a complaint against an insured alleges facts which, if proved, would result in coverage.'" *Weitzel*, 371 P.3d at 461 (citation omitted). "[I]f the asserted claim is not covered by the policy, then the insurer has no duty to defend the insured." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 108 P.3d 469, 478 (Mont. 2005).

> **2.   Swank does not qualify for additional insured status because the underlying cases do not impute T&L's liability to Swank**

Swank cannot show additional insured status when comparing Ball's and Lewis's lawsuits to the Policy's endorsements. Both endorsements have the same operative language providing additional insured status "only with respect to [T&L's] *liability*" for damages "which may be *imputed* to" the party seeking that status.[3] But Ball and

---

[3] Endorsement CG 71 31 02 15 has the identical requirement, though the Court need

Lewis do not try to impute T&L's liability to Swank. And Montana law would forbid them from doing so. T&L "is not subject to any liability whatever" for their negligence actions. Mont. Code Ann. § 39-71-411.

Start with the policy language. When substituting the word "your" with the named insured, T&L, as the Policy requires (*see* Br. § II.C.2.), the endorsements read:

- Endorsement CG 71 50 02 15 states "additional insured status will apply ***only with respect to [T&L's] liability*** for 'bodily injury' or 'property damage' ***which may be imputed*** to that person(s) or organization(s) directly arising out of 'your work' at the location designated and described in the written contract or written agreement performed for that additional insured and only for that liability included in the "products-completed operations hazard'."

- Endorsement CG 71 51 02 15 provides the status of "additional insured ***only with respect to [T&L's] liability*** for 'bodily injury', 'property damage' or 'personal and advertising injury' ***which may be imputed*** to that person or organization directly arising out of: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured."

*See* Br. §§ II.C.1.-3.

So both endorsements provide additional insured status "only with respect to [T&L's] ***liability***" for damages "which may be ***imputed***" to

---

not consider it because Swank is not a scheduled additional insured in the first instance, as shown above.

Swank. Swank cannot show the underlying lawsuits, if proven, fall within this additional insured coverage grant for two reasons: (1) Ball and Lewis do not allege T&L's "liability" is "imputed" to Swank; and (2) T&L is immune from "any liability whatever" for the negligence actions. Mont. Code Ann. § 39-71-411.

The word "liability" in the Policy and § 39-71-411 means the same thing—legal liability. *F.H. Stoltze Land & Lumber Co. v. Am. States Ins. Co.*, found additional insured status under similar policy language lacking because the named insured could "[]not be held liable under th[at] claim—[the named insured] ha[d] been dismissed from the underlying action due to immunity." 352 P.3d 612, 615 (Mont. 2015); *see Graham Constr., Inc. v. Markel Am. Ins., Co.*, 180 F. Supp. 3d 626, 638 (D. Neb. 2016) (following cases such as "*F.H. Stoltze* . . . [to hold] that the term 'held liable' refers solely to a *legal* obligation." (emphasis in original)).

The Policy's use of the phrase "which may be imputed to" the party claiming additional insured status further harmonizes this conclusion. Common definitions for "impute" or "imputed" when used as a verb include "to lay the responsibility or blame for something" and "to credit or ascribe something to a person or a cause[.]" Merriam-Webster's Online

Dictionary,       https://www.merriam-webster.com/dictionary/imputed
(accessed Dec. 11, 2019).

In tune with that common understanding, Montana law has long held the word "imputed" refers to extending liability from one party to another by vicarious liability. *E.g.*, *Sherris v. N. Pac. Ry.*, 175 P. 269, 270 (Mont. 1918) (explaining "[t]he doctrine of imputed negligence ha[d] been the law of this state for over twenty-two years" and observing it where "the negligence of the driver is imputable to the plaintiff"); *Auto. Club Ins. Co. v. Toyota Motor Sales*, 531 P.2d 1337, 1340 (Mont. 1975) (equating "imputed negligence" with "responsibility under the doctrine of *respondeat superior*"); *Asurion Servs., LLC v. Mont. Ins. Guar. Ass'n*, 396 P.3d 140, 145 (Mont. 2017) (in the context of equitable indemnity, explaining it applies, *inter alia*, where one person "is vicariously or otherwise imputed liable to a third-party for injury and damages"). As has Montana's legislature. *E.g.*, Mont. Code Ann. § 61-5-108 (imposing "imputed liability" to a "person who has signed the application of the minor" for certain liability "when driving a motor vehicle upon a highway").

That "imputed liability" imparts an understanding of "vicarious

liability" began with early English common law later adopted in the United States. *See In re Austin*, 36 B.R. 306, 311 (Bankr. M.D. Tenn. 1984) (explaining "[t]he concept of 'vicarious liability' or 'imputed liability' developed at early common law" and describing its history starting before "the 16th Century" and onwards). Courts in the United States continue to suppose "[v]icarious liability is a term" that "is also referred to as imputed negligence or imputed liability." *St. Paul Fire & Marine Ins. Co. v. Tyler*, 974 P.2d 611, 616 (Kan. App. 1999) (citations omitted); *see also, e.g.*, *Stat-Tech Liquidating Tr. v. Fenster*, 981 F. Supp. 1325, 1336 (D. Colo. 1997) (addressing "a vicarious liability claim premised on imputed liability under the law of agency and *respondeat superior*")[4].

With this understanding of the Policy, it provides additional insured status here "only with respect to [T&L's] liability" for damages "which may be imputed" to Swank. But the WCA's exclusivity statute dictates T&L "is ***not subject to any liability*** whatever" for Ball's and Lewis's negligence-based claims. Mont. Code Ann. § 39-71-411. Ball and

---

[4] *Respondeat superior* is one, but not the only, form of vicarious or imputed liability. *Stat-Tech Liquidating*, *supra*.

Lewis unsurprisingly do not allege otherwise. They didn't name T&L or make allegations imputing T&L's liability to Swank.

The Court can review Ball's and Lewis's complaints in vain for any allegations imputing T&L's liability to Swank. That ends Swank's case because the allegations against it do not fall within the Policy's scope.

*Weitzel* holds no defense is owed where the party seeking it "cannot show the complaint alleges facts that, if proven, would result in coverage[.]" *Weitzel*, 371 P.3d at 462; *see id.* at 463 (there is no duty to defend where "[t]he complaint does not expressly plead a claim" required for a coverage grant). Holding otherwise would require speculating about unpled allegations neither Ball nor Lewis assert. But the Montana Supreme Court has "never held that an insurer's duty to defend may be triggered by speculating about extrinsic facts and unpled claims regarding potential liability." *Id.* at 463.

To be sure, it would be legally impossible for Ball and Lewis to impute T&L's liability to Swank. Swank acknowledges Ball and Lewis were T&L's employees. Compl., at ¶ 11. The WCA's exclusivity statute provides, in relevant part, that T&L has no "liability" for Ball's and Lewis's negligence claims:

> ****[A]n employer is **not subject to any liability whatever** for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death. The Workers' Compensation Act binds the employee and *** all persons having any right or claim to compensation for the employee's injury[.]****

Mont. Code Ann. § 39-71-411.

Thus, not only do Ball and Lewis not plead any claims imputing T&L's "liability" to Swank as the endorsements require for additional insured status, § 39-71-411 establishes T&L is "not subject to any liability whatever" for their complaints. Comparing the underlying lawsuits against Swank to the Policy undeniably shows United Fire owes Swank no duty to defend as an additional insured. Montana's jurisprudence involving additional insured claims supports this result.

Begin with *Plum Creek Mktg. v. Am. Econ. Ins. Co.*, 214 P.3d 1238 (Mont. 2009). Garage Doors contracted for work at Plum Creek's facilities and was required to indemnify Plum Creek and obtain insurance naming it as an additional insured. *Id.* at 1240-41. Moser was injured at the facilities and sued Plum Creek for "negligence and failure to provide a safe work place[.]" *Id.* at 1241. Plum Creek demanded Safeco/American defend it as an additional insured. A policy endorsement stated: "The

person or organization added as an insured by this endorsement is an insured only to the extent you are held liable[.]" *Id.* Safeco responded no defense was owed because that endorsement and WCA exclusivity. *Id.* at 1242.

The Montana Supreme Court found the "scenario . . . [wa]s straightforward and d[id] not call for an elaborate analysis." *Id.* at 1248. The court held "[t]he terms of the [p]olicy and [e]ndorsement taken together are clear and unambiguous, and do not provide coverage to Plum Creek[.]" *Id.* The policy only provided Plum Creek additional insured status to the extent Garage Doors, the named insured, could be "held liable." *Id.* at 1241. With "[t]he [e]ndorsement, Garage Doors could not be held liable in th[at] case because . . . Moser's complaint alleged negligence *against Plum Creek*, not Garage Doors." *Id.* at 1247 (emphasis in original).

Here, too, additional insured status exists for Swank only when T&L's "liability" is "imputed" to Swank. But Ball and Lewis make no allegations about T&L's liability and never sued it.

That's particularly true given the WCA forbids any such allegations, as in *F.H. Stoltze*. There, Schlegel contracted "to log Stoltze's

property." *F.H. Stoltze*, 352 P.3d at 613. That contract required Schlegel obtain insurance, including additional insured coverage, and waive immunity concerning indemnity obligations. *Id.* Schlegel's employee was injured during logging operations. Though Schlegel covered the employee for "workers' compensation benefits," the employee "filed a personal injury lawsuit against both Schlegel and Stoltze." *Id.* But Schlegel was then dismissed based on WCA immunity. *Id.* The insurer, ASI, withdrew Stoltze's defense because the policy "covered Stoltze only to the extent that Schlegel was liable," and Schlegel was dismissed. *Id.*

The Montana Supreme Court held ASI properly denied Stoltze additional insured status. Applying the same language in *Plum Creek*, the court explained: "If ***no liability can be imposed by law*** on Schlegel, then ***no coverage*** is provided to Stoltze." *Id.* at 615. Observing WCA immunity precluded liability on Schlegel, the court further rejected Stoltze's argument that delegation and vicarious liability created coverage:

> Schlegel cannot be held liable under this claim—Schlegel has been dismissed from the underlying action due to immunity. Stoltze's liability for Schlegel's actions is not the same as Schlegel's liability, which is what the Policy requires for coverage to extend to Stoltze in this case. Stoltze's liability for its own acts or omissions also is not within the scope of

Schlegel's policy with ASI.

*Id.*

Likewise, here. Swank's liability for its own acts or omissions is not within the scope of the Policy's additional insured endorsements. Additional insured status is conveyed only when the party seeking it is facing a claim imputing T&L "liability" to it. But T&L cannot be liable for either underlying case. Neither Ball nor Lewis sued T&L or made any allegations concerning T&L's liability. Rather, T&L is not subject "to any liability whatever" due to immunity. Mont. Code Ann. § 39-71-411.

Another court interpreted United Fire's policy language similarly. In *United Fire & Cas. Co. v. Gethmann Constr. Co.*, a general contractor claimed additional insured status under United Fire's policy issued to a subcontractor for a worker's injury claim. 872 N.W.2d 409 (Iowa Ct. App. 2015) (unpublished). The court held the general contractor was not entitled to a defense after the named insured subcontractor was released, holding: "[A]fter the release, [the named insured subcontractor] does not have any liability that could be imputed to [the general contractor]." *Id.* at *15.

Applying the same operative endorsement language here, United

Fire *never* had a duty to defend Swank, and it never *can* have a duty to defend Swank. Ball and Lewis do not allege T&L has any liability that can be imputed to Swank. T&L cannot, by operation of law, have any "liability" that could be imputed to Swank due to immunity. *Gethmann Constr.* compliments the Montana Supreme Court's decisions in *Plum Creek* and *F.H. Stoltze.*

Simply put, the relevant endorsements provide Swank additional insured status "only with respect to [T&L's] *liability*" for damages "which may be *imputed*" to Swank. United Fire is entitled to judgment on the pleadings. The underlying complaints (1) do not allege anywhere T&L has any "liability" that could be "imputed" to Swank, (2) the WCA's immunity statute, § 39-71-411, establishes T&L is "not subject to any liability whatever," so the underlying plaintiffs are legally precluded from asserting allegations triggering an additional insured grant.

### 3. Swank's supportive case, and others like it, did not address the imputed liability scenario here

The Policy's language when compared to the underlying complaints show this case's outcome is like *Plum Creek* and *F.H. Stoltze.* It is unlike decisions from this District and one from the Montana Supreme Court

involving much broader additional insured coverage grants.

For instance, Swank's complaint cites *Liberty Mutual Insurance Company v. Continental Resources, Inc.*, 2011 U.S. Dist. Lexis 80152, CV 10-35-BLG-RFC-CSO (D. Mont. Apr. 25, 2011). But that case involved a much broader "Blanket Additional Insured Endorsement." *Compare id.* at *4-5 *with* Br. § II.C.1.(a)-(b). That endorsement did not contain any requirement as to "liability", *id.*, which is why this Court distinguished *Plum Creek*, *id.* at *20. This Court held that "nothing in th[at] [p]olicy require[d] that [the named insured] be liable before coverage [wa]s available to [the additional insured]." *Id.*

But the Policy here provides additional insured status "only with respect to [T&L's] liability" for damages "which may be imputed" to the party claiming it. For the same reason, *Continental Resources*' main supportive case does not apply. *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260 (Mont. 2009), addressed broad additional insured language that did *not* contain a named insured liability requirement (*see id.* at 1268). The same can be said for *WBI Energy Transmission*, which similarly contained broad language, 56 F. Supp. 3d at 1198, that is unlike *Plum Creek*, *F.H. Stoltze*, and this case.

### 4. Swank's legal conclusions regarding the Subcontract and Certificate do not manufacture additional insured status

Nor do the Subcontract or Certificate of Insurance manufacture additional insured status. *Twombly* and *Iqbal* require "eliminating . . . unsupported legal conclusions. . . .'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Swank's legal conclusions regarding these documents (Compl., at ¶¶ 9, 13) are accordingly eliminated.

Start with the Subcontract. In *F.H. Stoltze.*, a party demanding additional insured status argued "the contract between" it and the named insured required it. 352 P.3d at 615. The Montana Supreme Court held "[a]n insurer's duty to defend or indemnify, however, depends on the four corners of the invoked insurance policy—***not*** on an agreement between an insured and a third party." *Id.*

Under *F.H. Stoltze*, it is United Fire's policy language that determines whether Swank qualifies as an additional insured—not the Subcontract between Swank and T&L.

The same for the Certificate. The Certificate "does not constitute a contract" and "does not confer rights to the certificate holder" but, instead, was "issued as a matter of information only and confers no rights

upon the certificate holder." It "does not affirmatively or negatively amend, extend or alter" coverage.

It follows the Certificate "does not constitute a contract to procure insurance or impose a duty upon the certificate issuer to procure the same." *Seal v. Hart*, 50 P.3d 522, 529 (Mont. 2002) (citing *R.H. Grover, Inc. v. Flynn Ins. Co.*, 777 P.2d 338, 341 (Mont. 1989)). *Seal* considered a similar certificate that was "issued as a matter of information only and confer[ed] no rights upon the certificate holder[.]" *Id.* Nor did it "amend, extend or alter the coverage afforded by the policies" listed, *id.*, just like here. *Seal* followed the general rule that "a certificate of insurance is merely evidence of the existence of an insurance policy. *Id.* (citing 13A Appleman, *Insurance Law and Practice* § 7530 (1976 and Supp. 1997)).

As in *Seal*, the Certificate's plain language shows it does not bind any coverage but is merely evidence a policy exists. The Certificate says nothing about Swank being an additional insured or under what circumstances it could so qualify. "This principle [i]s reaffirmed by the certificate itself." *Id.*; *accord Farmers Ins. Exch. v. Green*, Cause No.: 17-1456, at 13 (Mont. Dist. Ct. Jan. 29, 2019) (concluding, under *Seal*, that a certificate of insurance did not "create coverage where none existed"

(attached as **Ex. C**); *T.H.E. Ins. Co. v. City of Alton*, 227 F.3d 802, 806 (7th Cir. 2000) (similar); *SLA Prop. Mgmt. v. Angelina Cas. Co.*, 856 F.2d 69, 73 (8th Cir. 1988) (similar).

Simply put, neither the Subcontract nor the Certificate create additional insured status. Policy language controls, and Swank is not an additional insured.

### 5. Swank's answers and defenses are also irrelevant

Swank attached its answers, Doc. 1-2, but they do not manufacture coverage. It is the allegations against Swank—which are taken "as true"—that matter. *Weitzel*, 371 P.3d at 462; *see also, e.g.*, *State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013) ("the duty to defend is triggered when 'a complaint against an insured alleges facts, which if proven, would result in coverage.'"). As Judge Christensen recognized in another duty to defend case, the "Court does not have the authority to determine whether [parties seeking a defense] have a valid defense in the underlying litigation, and it is irrelevant to this proceeding." *Mid-Century Ins. Co. v. Windfall, Inc.*, No. CV 15-146-M-DLC, 2016 U.S. Dist. LEXIS 67482, at *9 (D. Mont. May 23, 2016).

### B.   The   Policy's   Total   Pollution   Exclusion Precludes Coverage

The Court need not reach exclusions since Swank does not qualify for coverage. *Weitzel*, 371 P.3d at 461. But the Total Pollution Exclusion applies.

Ball and Lewis allegedly were "exposed to ***chemicals*** contained in modified polyamine epoxies[.] Underlying Cases, at ¶ 5. This happened as they "applied the [e]poxies to large tanks[.] *Id.* at ¶ 14. United Fire shows below that (1) "chemicals contained in modified polyamine epoxies" are "pollutants" within the exclusion, and (2) the exclusion precludes coverage.

Montana previously enforced other pollution exclusions. *E.g.*, *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 174 P.3d 948, 959 (Mont. 2008) ("[W]e hold that the terms of the pollution-exclusion clause are not ambiguous."); *Sokoloski v. Am. W. Ins. Co.*, 980 P.2d 1043, 1046 (Mont. 1999).  Note the Total Pollution Exclusion below does *not* contain a "sudden and accidental" provision, though Montana law would enforce it if it did. *Ribi Immunochem*, *supra*; *Sokoloski*, *supra*.

Endorsement CG 21 65 12 04 provides a "**TOTAL POLLUTION EXCLUSION**", subject to exceptions not relevant here, and modifies the

Policy:

> This insurance does not apply to:
>
> **f. Pollution**
>
> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Policy, at (25/127). Pollutants" are:

> **15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, ***chemicals*** and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Policy, at (20/127).

The *same* exclusion and definition precluded coverage for an epoxy-related loss in *Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779 (E.D. Va. 2007). The underlying claimant "alleg[ed] that she developed respiratory problems . . . as a result of inhaling fumes from the epoxy applied by Kline," and, specifically, "fumes from the epoxy/eurathane[.]" *Id.* at 782. Previously, "Kline contracted to apply and did apply an epoxy and eurathane protective sealant to the concrete floor at [R.J. Smith's] warehouse[.]" *Id.* Kline and R.J. Smith demanded insurance coverage, and the issue was:

Central to the resolution of this case is the Total Pollution Exclusion clause ("Pollution Exclusion") contained in the Policy which provides, in pertinent part:

**TOTAL POLLUTION EXCLUSION**…

This insurance does not apply to:

. . .

### f. Pollution

> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> In pertinent part, the Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

*Id.* at 783 (internal citations omitted).

Coverage was excluded. The court first held "the term 'pollutant' unambiguously include[d] the fumes released from the epoxy/eurathane sealant Kline applied to the warehouse floor." *Id.* at 791. "[T]he noxious fumes emanating from the epoxy sealant were 'irritant[s] or contaminant[s]' as that term is used in the Policy, and as those words are ordinarily understood." *Id.*

The court then focused on the policy phrase "discharge, dispersal,

seepage, migration, release or escape[.]" *Id.* The court gave these terms

their plain and ordinary meaning:

> To "discharge" is to, *inter alia*, "pour forth; emit," or "to
> release, send away, or allow to go (often fol. by *from*),"
> *Webster's New Universal Unabridged Dictionary* 561 (2003),
> or to "allow (a liquid, gas, or other substance) to flow out from
> where it has been confined," *The New Oxford American
> Dictionary* 482 (2d ed. Oxford Univ. Press 2005). "Dispersal"
> is "to cause (particles) to separate uniformly throughout a
> sold, liquid, or gas," *Webster's*, *supra*, at 568, or "the action or
> process of distributing things . . . over a wide area," *Oxford*,
> *supra*, at 488. "Seepage" is "the process of seeping," that is
> "the slow escape of a liquid or gas through porous material or
> small holes." *Oxford*, *supra*, at 1534. "Migration" is to "move
> from one specific part of something to another." *Id.* at 1074.
> To "release" is "to free from confinement, bondage, obligation,
> pain, etc.; to let go." *Webster's*, supra, at 1627. And "escape"
> has been defined as, among other things, "leakage, as of water
> or gas." *Id.* at 660; *see also Oxford*, supra, at 574 (defining
> "escape" as "(of a gas, liquid, or heat) leak from a container").

*Id.* at 798. No duty to defend or indemnify existed, the court concluded,

because "[a] pollutant, the epoxy floor sealant, was applied to the surface

of the warehouse floor, and it dispersed into the air above and around the

warehouse floor, to reach the claimant's office where she was injured. *Id.*

### 1.   "Chemicals contained in the modified polyamine epoxies" are "pollutants"

The alleged "chemicals contained in the modified polyamine

epoxies" surely are "irritant[s] or contaminant[s], ***including*** . . .

***chemicals***" as the Policy defines "pollutants."

The Court need not look further than the Policy's "pollutants" definition. In *Sokoloski*, the Montana Supreme Court addressed whether "a discharge of smoke and soot" from "scented candles" was a "pollutant" in a homeowners policy's exclusion. 980 P.2d at 1044. "'Pollutants' [wa]s defined under the policy as 'any solid, liquid, gaseous or thermal irritant or contaminant, *including smoke*, vapor, *soot*, fumes, acids, alkalis, chemicals and waste.'" *Id.* at 1044 (emphasis in original). The definition controlled:

> "Pollutants" was defined within the insurance policy, and smoke and soot damages were expressly included within the policy definition of "pollutants." We therefore need not look outside the insurance policy for a definition of "pollutants."

*Id.* at 1045.

Here, "chemicals" are expressly included within the Policy's definition of "pollutants." The Court need not look outside the Policy to determine the "chemicals contained in the modified polyamine epoxies" allegedly injuring Ball and Lewis are "pollutants."

### 2. The remainder of the exclusion precludes coverage

Having established the "chemicals contained in the modified

polyamine epoxies" are "pollutants," the exclusion precludes Ball's and Lewis's "bodily injury" claims "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" of these "pollutants."

Initially, Swank cannot argue the exclusion is limited to a "traditional" pollution scenario. The Montana Supreme Court rejected that position with a *homeowners policy* and damages *inside* a home. *Sokoloski*, 980 P.2d at 1044. The argument fails where the "damages [a]re expressly included within the policy definition of 'pollutants.'" *Id.* at 1045. So did *Kline & Son* with the same policy language in an epoxy case, where there was no "limiting language suggesting the pollution exclusion is not equally applicable to both 'traditional' and indoor pollution scenarios." 474 F. Supp. 2d at 796. It would be "impermissible . . . to construe the clause as creating an ambiguity where none exists[.]" *Id.* at 797.

Montana law also forbids policy rewriting. *Crumleys*, 174 P.3d at 957 ('. . . ."if the language is clear and explicit [courts] may not rewrite an insurance contract, but must enforce it as written . . . expectations which are contrary to a clear exclusion from coverage are not objectively reasonable'").

Applying plain meaning construction, Ball's and Lewis's alleged "bodily injury" "would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" of the chemicals in the epoxies ("pollutants"). The epoxy chemical exposure is the entire basis for their lawsuits to satisfy the "in whole or part" requirement. The same goes with the "but for" requirement—without the alleged chemical exposure, they would not claim injuries or have sued.

*Kline & Son* gave the remaining terms ("discharge, dispersal, seepage, migration, release or escape") their "usual, common, and ordinary meaning" (as quoted above). 474 F. Supp. 2d at 798. Montana follows the same construction. *Associated Dermatology & Skin Cancer Clinic of Helena v. Mt. W. Farm Bureau Mut. Ins. Co.*, 389 P.3d 1027, 1029 (Mont. 2017) ("we look first to the policy's plain language" and "give the terms and words used in an insurance contract their usual meaning and construe them using common sense"). These terms have a common element:

> "Common to all of these terms is, obviously, ***the element of movement***. The listing of similar terms such as 'discharge' and 'dispersal,' preceded by the phrase 'actual, alleged, or threatened,' ***indicates an intent to comprehend all such***

***types and degrees of movement***." *Madison* [*v. Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)].

*Kline & Son*, 474 F. Supp. 2d at 798.

That "element of movement" is present here. As Ball and Lewis "applied the [e]poxies to large tanks," Underlying Cases, at ¶ 14, they were "exposed to chemicals contained in modified polyamine epoxies," *id.* at ¶ 5. In other words, as Ball and Lewis applied the epoxies to the tank, chemicals moved from the epoxies onto their bodies. That triggers the plain and unambiguous exclusionary language.

The Total Pollution Exclusion unambiguously precludes coverage.

## V.   CONCLUSION

For the reasons above, United Fire's Motion for Judgment on the Pleadings should be granted. It has no duty to defend, and since it has "no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005) (quoting *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996)).

DATED this  11th   day of  December, 2019.

        /s/ Nicholas J. Pagnotta
Nicholas J. Pagnotta, Esq.
Alexander T. Tsomaya, Esq.
*Attorneys for United Fire and Casualty*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing support (or response) brief complies with the 6,500 word limit of L.R. 7.1(d)(2)(A), in that it consists of 6,486 words as calculated by Microsoft Word 2010, excluding the parts of the brief exempted by the rule; and with L.R. 1.5(a), in that it is double spaced except for quoted material and footnotes, and typewritten in 14-pt font size.

/s/ Nicholas J. Pagnotta
Nicholas J. Pagnotta
Alexander T. Tsomaya
*Attorneys for United Fire and Casualty*

## CERTIFICATE OF CM/ECF SERVICE

I, the undersigned, hereby certify that on the 11th day of December, 2019, the foregoing document was filed in the CM/ECF filing system to be transmitted/served electronically upon all interested parties registered under the Court's CM/ECF system.

/s/ Nicholas J. Pagnotta
Nicholas J. Pagnotta
Alexander T. Tsomaya
*Attorneys for United Fire and Casualty*