Scott M. Stearns
Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
(406) 543-6646
sstearns@boonekarlberg.com
rtanner@boonekarlberg.com
*Attorneys for Swank Enterprises, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SWANK ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED FIRE AND CASUALTY COMPANY (d/b/a UNITED FIRE GROUP) and JOHN DOES 1–10, <br><br> Defendants. | **CV 19–179–M–DWM** <br><br> **SWANK ENTERPRISES, INC.'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

BACKGROUND..................................................................................................... 1

I.      The underlying cases............................................................................ 2

II.     Swank's tender to United Fire........................................................... 3

STANDARD............................................................................................................ 6

ANALYSIS.............................................................................................................. 7

I.     The United Fire Policy must be construed strictly against
United Fire and in favor of Swank.................................................. 7

II.    Swank and T&L Painting contractually agreed Swank would
be and is an additional insured...................................................... 8

III.   United Fire owes Swank coverage as an additional insured
under the Policy................................................................................ 13

      1.    Coverage under the Policy is not limited to the extent
T&L's "liability" may be "imputed" to Swank.............................. 14

      2.    United Fire has a duty to defend under the Subcontract
and Policy........................................................................................ 18

      3.    Even if the "imputed" "liability" language of the
Policy controls, judgment on the pleadings would still be
improper.......................................................................................... 22

IV.   Coverage is not barred by the Total Pollution Exclusion....................... 23

CONCLUSION...................................................................................................... 28

CERTIFICATE OF COMPLIANCE............................................................................ 30

i

# TABLE OF AUTHORITIES

## Federal Cases

*Ames Constr., Inc. v. Intermountain Indus.,*
712 F. Supp. 2d 1160 (D. Mont. 2010) .................................................. 8, 18

*Enron Oil Trading & Transp. Co. v. Underwriters of Llyod's of London,*
47 F. Supp. 2d 1152 (D. Mont. 1996) ................................................. 24, 25

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,*
132 F.3d 526 (9th Cir. 1997) ............................................................... 24, 26

*Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.,*
474 F. Supp. 2d 779 (E.D. Va. 2007) ........................................................ 24

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
896 F.2d 1542 (9th Cir. 1989) ..................................................................... 6

*Interpipe Contr., Inc. v. Becerra,*
898 F.3d 879–87 (9th Cir. 2018) ................................................................ 6

*Liberty Mut. Ins. Co. v. Cont'l Res.,*
2011 U.S. Dist. Lexis 80152 (D. Mont. April 25, 2011) ...................... 4, 9, 13

*Monroe v. Cogswell Agency,*
234 P.3d 79–89 (D. Mont. 2010) .............................................................. 22

*N.Y. Marine & Gen. Ins. Co. v. JCCS,*
2019 U.S. Dist. Lexis 123533  (D. Mont. July 24, 2019) ............................. 6

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,*
976 F.2d 1037 (7th Cir. 1992) ............................................................. 25-26

*Rubin v. United States,*
904 F.3d 1081 (9th Cir. 2018) ................................................................ 7-8

*WBI Energy Transmission, Inc. v. Colony Ins. Co.,*
56 F. Supp. 3d 1194 (D. Mont. 2014) ................................................. 8, 9, 18

*Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*,
768 F. Supp. 1463 (D. Kan. 1991) ........................................................ 24-25

**State Cases**

*Am. Sts. Ins. Co. v. Kiger*,
662 N.E.2d 945 (Ind. 1996) ........................................................ 26

*Bennett v. State Farm Mut. Auto Ins. Co.*,
862 P.2d 1146 (Mont. 1993) ........................................................ 11

*Cross v. Warren*,
435 P.3d 1202 (Mont. 2019) ........................................................ 17

*Farmers Union Mut. Ins. Co. v. Staples*,
90 P.3d 381 (Mont. 2004) ........................................................ 18, 19, 21

*Revelation Indus. v. St. Paul Fire & Marine Ins. Co.*,
206 P.3d 919 (Mont. 2009) ........................................................ 28

*Sokoloski v. Am. W. Ins. Co.*,
980 P.2d 1043 (Mont. 1999) ........................................................ 27

*Tidyman's Mgmt. Servs. v. Davis*,
330 P.3d 1139 (Mont. 2014) ........................................................ 19

**State Statutes**

Mont. Code Ann. § 39–71–411 ........................................................ 3, 13

**Rules**

Mont. R. Civ. P. 12(b)(6) ........................................................ 6

Swank Enterprises, Inc. respectfully requests the Court deny United Fire and Casualty Company's Motion for Judgment on the Pleadings. When the facts are construed in Swank's favor, as they must, and the insurance policy is construed in Swank's favor, as it must, Swank asserts a valid claim for additional insured coverage against United Fire. Through its motion, United Fire advances an interpretation of the insurance contract that is contrary to Swank's subcontract with T&L Painting Inc. and contrary to Swank's reasonable expectations regarding the coverage it was to receive. United Fire has not met the heavy burden it bears on a motion for judgment on the pleadings.

## BACKGROUND

Swank was the general contractor for a construction project at the Butte-Silverbow Metro Wastewater Treatment Plant in Butte, Montana ("the Project"). (Doc. 1 at ¶ 6.) Swank subcontracted with a painting subcontractor—T&L Painting, Inc.—to apply various coatings at the project. (Doc. 1 at ¶ 6.) Swank's contract with T&L is attached as Exhibit A ("the Subcontract").[1] Through the Subcontract, T&L assumed responsibility for ensuring the safety of its employees (Ex. A at Swank 7-9), and it agreed to

---

[1] The copy United Fire attached to its brief appears to be incomplete (*see* Doc. 9-1). Exhibit A is believed to be the complete Subcontract.

obtain additional insured coverage for Swank (Ex. A at Swank 21-22).  As Dave Stewart, Swank's Safety Director, testifies in his attached affidavit, Swank has incorporated both of these provisions in its subcontracts to protect Swank from the negligence of its subcontractors, their employees, and those working on their behalf.  (Exhibit B at ¶¶ 6-8, 11.)

## I.    The underlying cases

In June and July 2018, two former T&L employees—Ronald Ball and Jeremy Lewis—filed separate lawsuits in Montana state court against Swank, alleging that, while employed with T&L, they were injured at the Project by epoxy coatings manufactured by Tnemec Company Inc.  Ball and Lewis also sued Tnemec, which provided onsite training on T&L's behalf.  Collectively, these cases are referred to as the "Underlying Cases" in this brief.  Copies of the complaints from the Underlying Cases are at Doc. 1-1.

Generally speaking, Ball and Lewis allege Swank failed to provide a safe place to work at the Project.  Swank affirmatively denied these allegations in its Answers and discovery and alleged that Ball's and Lewis's injuries were the result of their own negligence or the negligence of others.  (*See infra* at pages 18-22.)

The Underlying Cases are in their early stages.  No scheduling order has been issued, and no deadline has been set for amendment of the pleadings or

joinder of parties.  The parties have exchanged an initial round of written discovery (*see, e.g.*, Exhibits C and D), and Swank has taken Ball's and Lewis's depositions (*see* Exhibits E and F).  There is still much discovery to be done, but, as discussed in more detail below (*see infra* at pages 18-22), the discovery conducted thus far confirms that (1) Ball's and Lewis's alleged injuries were caused by their own negligence and (2) Ball and Lewis claim Tnemec, who was acting on T&L's behalf, negligently failed to provide appropriate safety training for the epoxies.

## II.    Swank's tender to United Fire

The complaints in the Underlying Cases were served on February 25, 2019.  (Exhibit G.)  On March 18, 2019, Swank tendered the defense and indemnity of Ball's and Lewis's claims to T&L's insurer, Defendant United Fire and Casualty Company.  (Exhibit H at Swank 42–95.)  The tender was based, in part, on Swank's status as an additional insured under the Subcontract.

United Fire rejected the tender, contending that no defense or indemnity was owed because T&L was immune from liability under Montana's Workers' Compensation exclusivity statute, Section 39–71–411. (Ex. H at Swank 96–97.)  United Fire did not point to any policy provisions that it believed excluded additional insured coverage, and it did not address

3

Swank's status as an additional insured (even from the beginning, United Fire never provided a copy of the policy or any of policy provisions to Swank). Instead, United Fire argued Swank could not seek contribution or indemnity from T&L under the exclusivity statute.

Swank responded and, as it had done in its initial letter, made clear that it was seeking coverage as an additional insured, not merely contractual indemnity.  (Ex. H at Swank 98–99.)  Swank discussed (as it did in the initial letter) this Court's decision in *Liberty Mutual Insurance Co. v. Continental Resources*, where the Court concluded the exclusivity statute is <u>no bar</u> to a general contractor's coverage as an additional insured.  2011 U.S. Dist. Lexis 80152, at *18–*19 (D. Mont. April 25, 2011), *affirmed*, 501 Fed. Appx. 626 (9th Cir. 2012).  United Fire, however, provided no substantive argument as to why Swank was not entitled to additional insured coverage and, instead, continued to argue Swank was not entitled to contractual indemnity.  (Ex. H at Swank 113–115.)

United Fire then demanded that Swank provide a copy of the Subcontract with T&L, despite Swank having already provided it.  (Ex. H at Swank 118–119.)  Swank nonetheless again provided the Subcontract to United Fire.  United Fire responded by simply claiming *Liberty Mutual* "is an

unreported U.S. District Court case without any precedential value." (Ex. H at Swank 174–175.)

Up to that point, United Fire still had not provided a copy of its policy and had not pointed to any policy provision that would exclude additional insured coverage for Swank. On August 6, 2019, Swank wrote to United Fire and requested that United Fire provide a copy of its policy. (Ex. H at Swank 176.) United Fire responded, "declining [Swank's] request" and contending it did not have to provide the policy because it was T&L's "property." (Ex. H at Swank 177.) United Fire refused to provide the policy despite the fact that it knew Swank was an additional insured under the policy pursuant to the terms of the Subcontract. United Fire provided the policy only after Swank was forced to file this lawsuit. (*See* Doc. 5 at 3.) Up until the time United Fire filed its Answer, it had never identified a single policy provision that it believed barred coverage for Swank as an additional insured.

Now, however, United Fire argues that Swank is not covered as an additional insured on account of (1) limiting language in the Policy's additional insured endorsements and (2) a pollution exclusion. United Fire moves for judgment on the pleadings on this basis. As discussed below, the Court should deny United Fire's motion. The Policy's additional insured endorsements are impermissibly narrower than what Swank and T&L agreed

5

to in the Subcontract and, regardless, the endorsements were revised such that additional insured coverage <u>cannot</u> be narrower than what Swank and T&L agreed to.  Finally, this Court and the Ninth Circuit have rejected the broad reading of the pollution exclusion that United Fire now asks the Court to adopt.  Construing the facts in Swank's favor, Swank is entitled to coverage as an additional insured and United Fire's motion should be denied.

STANDARD

When deciding a motion for judgment on the pleadings, the allegations in the non-moving party's pleadings are assumed true and construed in favor of that party.  *Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018).  "[T]he allegations of the moving party which have been denied are assumed to be false."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1545 (9th Cir. 1989).  As with a motion to dismiss filed under Rule 12(b)(6), a motion for judgment on the pleadings may only be granted if the complaint has "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Interpipe*, 898 F.3d at 886.  "A court must resolve all doubts in favor of the nonmoving party."  *N.Y. Marine & Gen. Ins. Co. v. JCCS*, 2019 U.S. Dist. Lexis 123533, CV 14–83–GF–BMM (D. Mont. July 24, 2019) (citations omitted).

**ANALYSIS**

Through its motion, United Fire asks the Court to construe a host of facts in its favor, precisely the opposite of what is required on a motion for judgment on the pleadings.  It asks the Court to discount entirely what Swank and T&L agreed to in their Subcontract—including T&L's commitment to obtain additional insurance coverage, the scope of which was clearly specified in the Subcontract.  It asks the Court to ignore Swank's reasonable expectations regarding the coverage it was to receive pursuant to the Subcontract.  It asks the Court to ignore revisions to the Policy's additional insured endorsements that prevent United Fire from providing coverage narrower than that agreed to in the Subcontract.  And it asks the Court characterize the application of the epoxies as "pollution" that bars coverage.  United Fire has not pointed to any cases where a Court has granted judgment on the pleadings on similar coverage issues, and such judgment is not justified in this case.  Swank respectfully requests the Court deny United Fire's motion.

## I.     The United Fire Policy must be construed strictly against United Fire and in favor of Swank.

The facts are construed in favor of the non-moving party (here, Swank) on a motion for judgment on the pleadings.  *See, e.g.*, *Rubin v. United States*,

904 F.3d 1081, 1083 (9th Cir. 2018).  This is doubly true when it comes to disputes concerning insurance coverage.

"When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products."  *WBI Energy Transmission, Inc. v. Colony Ins. Co.*, 56 F. Supp. 3d 1194, 1198 (D. Mont. 2014) (citation omitted).  Consequently, the court's interpretation of an insurance policy "should honor the objectively reasonable expectations of the insured."  *Ames Constr., Inc. v. Intermountain Indus.*, 712 F. Supp. 2d 1160, 1164 (D. Mont. 2010).  "Policies are to be construed strictly against the insurer and in favor of the insured."  *WBI Energy*, 56 F. Supp. 3d at 1198 (citation omitted).  This is no less true when the insurance consumer is a business entity, like Swank, as opposed to an ordinary individual.  *See, e.g.*, *Ames Constr.*, 712 F. Supp. 2d at 1164 (holding energy company was additional insured under contractor's policy).  As discussed below, Swank is entitled to coverage from United Fire as an additional insured, particularly when the facts are construed in Swank's favor.

## II.   Swank and T&L Painting contractually agreed Swank would be and is an additional insured.

In its opening brief, United Fire focuses solely on select language from the Policy, but the Policy language is only part of the analysis.  A dispute

regarding a general contractor's coverage as an additional insured "requires the Court to interpret language from both the Contract between [the general contractor and the subcontractor] and the [subcontractor's] insurance policy . . . ." *Liberty Mutual*, 2011 U.S. Dist. Lexis 80152, at *18–*19.  In doing so, the terms of the insurance policy must be construed in favor of the coverage agreed upon in the construction agreement between the contractor and subcontractor.  *See generally WBI Energy*, 56 F. Supp. 3d at 1197–1201.

This Court explained in *WBI Energy* that when a construction agreement requires a business to be named as an additional insured on the subcontractor's policy, that business is, in fact, an additional insured.  *Id.* at 1198.  That makes sense, of course, because a general contractor's reasonable expectation is that it will be covered as an additional insured if it and the subcontractor contractually agreed to that coverage.  The "common sense meaning" of insurance provisions in a subcontract is that additional insured coverage will be provided to the general contractor as agreed to in the subcontract.  *Id.* at 1199.

Here, Swank and T&L Painting undisputedly agreed in the Subcontract that Swank would be an additional insured under T&L's liability policy.  (Ex. A at Swank 21–22.)  Section 9.2.11 of the Subcontract provides:

__X__.1  ADDITIONAL INSURED.   Contractor shall be named as an additional insured on Subcontractor's Commercial General Liability Insurance specified, for operations and completed operations, but only with respect to liability for bodily injury, property damage or personal and advertising injury to the extent caused by the negligent acts or omissions of Subcontractor, or those acting on Subcontractor's behalf, in the performance of Subcontract Work for Contractor at the Project site.

. . .

Any documented additional cost in the form of a surcharge associated with procuring the additional liability coverage in accordance with this Subparagraph shall be paid by the Contractor directly or the costs may be reimbursed by Contractor to Subcontractor by increasing the Subcontract Amount to correspond to the actual cost required to purchase and maintain the additional liability coverage.  Prior to commencement of the Subcontract Work, Subcontractor shall obtain and furnish to the Contractor a certificate evidencing that the additional liability coverages have been procured.

(Ex. A at Swank 21–22.)

There are several key terms to note in this additional insured provision, each of which evidences Swank's reasonable expectation that it would be covered as an additional insured.  First, Swank agreed to exchange valuable consideration for the additional-insured coverage.  Under the terms of the Subcontract, Swank was required to either pay T&L a "surcharge" for the coverage or, if Swank did not pay the surcharge directly, T&L was permitted to "increas[e] the Subcontract Amount to correspond to the actual cost required to purchase and maintain the additional liability coverage."  Of

course, Swank's reasonable expectation is that it would get what it paid for. *See, e.g.*, *Bennett v. State Farm Mut. Auto Ins. Co.*, 862 P.2d 1146, 1148 (Mont. 1993) ("The public policy . . . is that an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration.").

Second, the scope of the contractually agreed upon coverage is clear. Swank and T&L agreed Swank would be covered as an additional insured for any "negligent acts or omissions of [T&L], or those acting on [T&L's] behalf, in the performance of Subcontract Work for [Swank] at the Project site." Swank and T&L did <u>not</u> limit the coverage to T&L's legal "liability" that might be "imputed" to Swank, which is how United Fire attempts to construe the coverage. As Dave Stewart, Swank's Safety Director, testifies in his affidavit, this provision is included in Swank's subcontracts for a reason—Swank, as a general contractor, intends and expects that subcontractors will insure Swank for defense and indemnity costs arising in part or whole from the negligence of subcontractors, their employees, and those acting on the subcontractors' behalf. (Ex. B at ¶¶ 6-8, 11.)

Finally, the additional insured provision requires T&L to provide Swank a certificate of insurance "evidencing that the additional liability coverages have been procured." In other words, T&L must provide evidence it obtained

11

the coverage it promised to obtain.  Here, T&L provided Swank a Certificate of Liability Insurance.  (Ex. A at Swank 34.)

In its opening brief, United Fire attempts to dismiss the Certificate, writing, "[t]he Certificate says nothing about Swank being an additional insured . . . ."  (Doc. 9 at 30.)  United Fire is wrong on that point, but, as a threshold matter, United Fire did not attach the correct certificate to its opening brief.  The certificate it attached is for the "Basin Creek WTP," not the Butte-Silverbow Metro Wastewater Treatment Plant project.  (*See* Doc. 9-2.) The correct Certificate is attached here at Exhibit A at Swank 34.[2]  Even so, the correct Certificate identifies Swank as a "Certificate Holder," and indicates the coverage is provided to Swank as an "ADDL INSD."  United Fire provides no explanation for what "ADDL INSD" might mean other than "additional insured."  There is no question that the Certificate indicates Swank is an additional insured under T&L's policy, precisely as required by the Subcontract.

Construing the facts in favor of Swank, as the Court must do on a motion for judgment on the pleadings, Swank and T&L agreed in the Subcontract that T&L would obtain additional insured coverage for Swank—

---

[2] The correct Certificate indicates "Additional insured endorsements attached," but it is not clear whether those endorsements were ever actually attached to the Certificate that Swank received.  (Ex. A. at Swank 34.)

the scope of which is described in the Subcontract—and T&L provided a certificate evidencing that it did, in fact, obtain that coverage.

## III. United Fire owes Swank coverage as an additional insured under the Policy.

The Subcontract sets forth the terms of the additional insured coverage Swank reasonably expected to receive and that T&L contractually agreed to provide.  United Fire, however, argues the Subcontract is meaningless, the Court should ignore it, and that additional insured coverage is excluded under the Policy.

United Fire's principal argument is that Swank is not an additional insured under the Policy because the Policy provides additional insured coverage only to the extent that T&L's "liability" may be "imputed" to Swank. (Doc. 9 at 16–27).  United Fire argues that, since T&L is immune from liability under the workers' compensation exclusivity statute (Mont. Code Ann. § 39–71–411), T&L can never be "liable" in the Underlying Cases and therefore no liability on T&L's part can ever be imputed to Swank.[3]  United

---

[3] To be clear, United Fire does not argue the exclusivity statute bars additional insured coverage as a general matter.  Nor could it.  In *Liberty Mutual*, this Court concluded that a subcontractor's obligation to provide additional insured coverage exists separate and apart from any contractual indemnity agreement, which might be barred by the exclusivity statute.  2011 U.S. Dist. Lexis 80152 at *7–*14.

Fire's position is based on faulty assumptions where it attempts to construe the facts in its favor, which is precisely the opposite of what is required on a motion for judgment on the pleadings.

### 1. Coverage under the Policy is not limited to the extent T&L's "liability" may be "imputed" to Swank.

United Fire argues that coverage under the Policy for additional insureds is determined by four additional insured endorsements in the Policy:

- Endorsement CG 71 31 02 15 (*see* Doc. 5-1 at 36)
- Endorsement CG 20 11 04 13 (*see* Doc. 5-1 at 101)
- Endorsement CG 71 50 02 15 (*see* Doc. 5-1 at 37)
- Endorsement CG 71 51 02 15 (*see* Doc. 5-1 at 38–48)

United Fire summarily dismisses the first two because those endorsements apply only to additional insureds "shown in the Schedule." (Doc. 9 at 11.) United Fire claims Swank is not listed on a schedule, so those endorsements cannot apply. This is a remarkable position for United Fire to take since it—not Swank—was presumably in control of listing additional insureds in the endorsements. Since Swank and T&L contractually agreed Swank would be an additional insured, there is, at a minimum, a genuine issue of material fact when it comes to whether United Fire should have listed Swank in the schedules but wrongfully failed to do so. United Fire, however, asks the Court to construe the facts in its favor—the opposite of what the Court must do

14

when considering this motion—to conclude that United Fire properly omitted

Swank from the Schedules.

Setting aside the fact questions regarding the schedules, the language

contained in all four additional insured endorsements is largely the same.  For

instance, one of the endorsements—Endorsement CG 71 51 02 15—

<u>automatically</u> extends additional insured status when that coverage is

required by contract.  (*See* Doc. 5-1 at 42.)  That endorsement provides:

> Any person or organization for whom you are performing
> operations when you and such person or organization have
> agreed in writing in a contract or agreement that such person or
> organization be added as an additional insured on your policy <u>is
> an insured</u>.

(Doc. 5-1 at 42 (emphasis added).)  The endorsement then purports to limit

that coverage to "your liability for 'bodily injury' . . . which may be imputed to

that person or organization directly arising out of: 1. Your acts or omissions;

or 2. The acts or omissions of those acting on your behalf."  (Doc. 5-1 at 42.)

The other three endorsements have similar language.

This language is the basis of United Fire's principal argument—that T&L

is immune from liability under the Workers' Compensation Act, so T&L

cannot have any "liability" to impute to Swank.  United Fire's interpretation of

coverage is far narrower than what Swank and T&L agreed to in the

Subcontract.  In the Subcontract, Swank and T&L agreed Swank would be

covered for "the negligent acts or omissions of [T&L], or those acting on

[T&L's] behalf, in the performance of Subcontract Work for [Swank] at the

Project site."  (Ex. A at Swank 21–22.)  Thus, at a minimum, Swank would be

covered for:

1. the negligence of T&L's employees—i.e., Ronald Ball & Jeremy Lewis—who were either "acting on [T&L's] behalf" or whose acts may be attributed to T&L and

2. the negligence of Tnemec Company, Inc., who was also "acting on [T&L's] behalf" when it provided training to T&L at the Project site.

These negligent acts are discussed in more detail below.  It is important to

note, however, that the Policy does, in fact, provide coverage for these

negligent acts and that coverage is <u>not</u> limited to T&L's legal "liability" that

may be "imputed" to Swank.

Note, for instance, that the additional insured endorsements state "the

insurance afforded to such additional insured . . . [w]ill not be broader than

that which you are required by the contract or agreement to provide for such

additional insured."  (*See, e.g.*, Doc. 5-1 at 42.)  The endorsements, however,

do not indicate whether the insurance afforded may be "narrower" than what

is required by contract.  Of course, allowing United Fire to unilaterally narrow

the coverage agreed upon in the Subcontract would be directly contrary to

Swank's and T&L's reasonable expectations under the Subcontract and would

16

render the Policy illusory in that regard.  *Cross v. Warren*, 435 P.3d 1202, 1209 (Mont. 2019) ("A policy is illusory if it defeat[s] coverage for which the insurer has received valuable consideration." (citation and internal quotation marks omitted)).

Nevertheless, other portions of the Policy, resolve the question of whether United Fire is permitted to unilaterally narrow coverage for an additional insured.  As part of the Policy, United Fire issued a Revision Advisory Notice to policyholders identifying a number of revisions to the Policy.  (*See* Doc. 5-1 at 80–86.)  Those revisions included changes to the "Additional Insured Endorsements" relied upon by United Fire.  (Doc. 5-1 at 82–83.)  The changes to the additional insured endorsements include the following:

> The following additional insured endorsements are revised to indicate that when these endorsements are attached to a policy, if coverage provided to the additional insured is required by contract or agreement, <u>coverage to the additional insured will be afforded to the extent permissible by law and to the extent the named insured is required by the contract or agreement to provide insurance for the additional insured.</u>

(Doc. 5-1 at 82 (emphasis added).)  In other words, the Policy revised the additional insured endorsements to provide the coverage agreed upon in the Subcontract between the named insured and the additional insured.  United

Fire, therefore, is not permitted to limit or narrow the coverage agreed to by T&L and Swank in the Subcontract.[4]

> ### 2. United Fire has a duty to defend under the Subcontract and Policy.

Under the terms of the Subcontract and the Policy, Swank is covered for "the negligent acts or omissions of [T&L], or those acting on [T&L's] behalf, in the performance of Subcontract Work for [Swank] at the Project site." (Ex. A at Swank 21–22.)

To determine whether United Fire has a duty to defend under these terms, the Court must determine whether the "insured [Swank] sets forth facts that represent a risk covered by the terms of [the] insurance policy." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004) (citations omitted). These facts may be presented through, among other avenues, pleadings or discovery. *See WBI Energy*, 56 F. Supp. at 1202, n.3. "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a

---

[4] To the extent United Fire contends this revision does not revise or affect the coverage provided by the additional insured endorsements, the revision—at a minimum—creates an ambiguity in the policy that must be interpreted in Swank's favor. *See, e.g.*, *WBI Energy*, 56 F. Supp. 3d at 1202 (recognizing that ambiguity in an insurance contract regarding scope of coverage must be construed in favor of the insured and against the insurer); *Ames Constr.*, 712 F. Supp. 2d at 1165–66 (same).

duty to defend." *Staples*, 90 P.3d at 385 (citations omitted).  "Policy
exclusions must be construed narrowly in recognition of the fundamental
protective purpose of an insurance policy and the obligation of the insurer to
provide a defense." *Tidyman's Mgmt. Servs. v. Davis*, 330 P.3d 1139, 1149
(Mont. 2014) (citation omitted).  "The insurer must construe factual
assertions from the perspective of the insured rather than from its own
perspective." *Id.* (citation omitted).

The Underlying Cases are in their early stages.  No scheduling order has
been issued, and no deadline for amending the pleadings or joining parties
has been set.  However, based on the pleadings and discovery conducted so
far, there are undeniably fact disputes concerning (1) Ball's and Lewis's
negligence and (2) Tnemec's negligence.  When these factual allegations are
construed in Swank's favor—as they must both on a motion for judgment on
the pleadings and when considering an insurer's duty to defend—they
establish United Fire's duty to defend Swank as an additional insured.

Swank, in its Answers in the Underlying Cases, affirmatively denied it
was negligent with respect to Ball's and Lewis's alleged injuries and damages.
(*See generally* Doc. 1–2.)  Swank affirmatively alleged that Ball and Lewis
were contributorily negligent and caused their own injuries either in whole or
in part.  (Doc. 1-2 at 6, 14 (Second Affirmative Defense).)  Moreover, Swank

alleged that Ball's and Lewis's alleged damages were caused by the acts of others, which would include Tnemec, who manufactured the epoxies at issue. (Doc. 1-2 at 7, 15 (Ninth Affirmative Defense).)  These allegations must be accepted as true on a motion for judgment on the pleadings.

After Swank Answered the Complaints, the parties in the Underlying Cases conducted an initial round of written discovery and Ball's and Lewis's depositions were taken.  In its written discovery, Swank stated Ball and Lewis were contributorily negligent because, among other reasons, (1) they were responsible for knowing the appropriate personal protective equipment to use at the Project and for wearing that equipment but (2) they failed to wear or utilize that equipment.  (Ex. C at pp. 14–15; Ex. D at pp. 14–15.)  Moreover, as professional painters, Ball and Lewis should have been acutely aware of the hazards, if any, posed by the epoxies and should have taken steps to protect themselves.  But they apparently failed to take any safety precautions at all. Finally, Ball and Lewis have made claims directly against Tnemec—which was "acting on [T&L's] behalf"—alleging that Tnemec failed to provide proper safety training for the epoxies.  (Doc. 1-1 at 4, 9.)

Ball's and Lewis's depositions confirm they were contributorily negligent, and they reiterated their allegation that Tnemec negligent failed to provide proper training on the use of the epoxies.  Ball and Lewis testified

they did not wear any type of personal protective equipment to protect them from coming into contact with the epoxies and never reviewed the Material Safety Data Sheets ("MSDS") to understand the hazards posed by the epoxies. (Ex. E at 101:2–106:13; 106:14–107:25; 124:22–126:12 and Ex. F at 55:5–57:13, 100:8–14, 98:3–110:15).  They failed to do so despite the fact that they were employed as painters and should have known the hazards associated with the coatings they applied.  Ball and Lewis also testified that Tnemec, who provided training on T&L's behalf, failed to offer any safety training for the epoxies (Ex. E at 108:1–113:15 and Ex. F at 110:20–112:1).[5]

There is substantial discovery that must still be completed in the Underlying Cases.  But, despite the Underlying Cases being in their early stages, the pleadings, discovery, and deposition testimony show that Ball's and Lewis's claims arise, at least in part (if not in whole), from their negligence and their allegations of negligence against Tnemec, who was acting on T&L's behalf.  At a minimum, these facts must be construed in Swank's favor for purposes of United Fire's motion and its duty to defend.  United Fire has not made an "unequivocal demonstration that the claim against [Swank] does not fall within the insurance policy's coverage."  *Staples*, 90 P.3d at 385.

---

[5] Whether, in fact, Tnemec provided safety training is likely to be a factual dispute.  But Ball and Lewis nonetheless allege Tnemec failed to do so.

United Fire therefore owes Swank a duty to defend because the claims in the Underlying Cases arise from "the negligent acts or omissions of [T&L], or those acting on [T&L's] behalf, in the performance of Subcontract Work for [Swank] at the Project site."  (Ex. A at Swank 22.)

### 3. Even if the "imputed" "liability" language of the Policy controls, judgment on the pleadings would still be improper.

For all the reasons above, the additional insured coverage is not limited to T&L's "liability" that may be "imputed" to Swank.  But, even if it were, United Fire would still not be entitled to judgment on the pleadings.  If coverage is limited to T&L's liability that may be imputed to Swank, then that coverage is narrower than what Swank and T&L contractually agreed to.  That raises a critical fact question—Did United Fire have knowledge of the coverage required under the Subcontract but nonetheless issue a policy that failed to provide the required coverage?  If so, then United Fire may be negligent for failing to provide the requisite additional insured coverage, and Swank would amend its complaint accordingly.  *See, e.g.*, *Monroe v. Cogswell Agency*, 234 P.3d 79, 85–89 (D. Mont. 2010) (discussing circumstances under which an insurance agent and insurer may be liable for failing to procure or provide requested insurance coverage).

22

**IV.    Coverage is not barred by the Total Pollution Exclusion.**

United Fire argues coverage for Swank is barred by the Total Pollution Exclusion, separate and apart from the additional insured endorsements. United Fire's argument, however, is based on an overly broad interpretation of the Exclusion that this Court and the Ninth Circuit have already rejected.

United Fire argues the Total Pollution Exclusion endorsement (Doc. 5-1 at 25) bars coverage for: "'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." (Doc. 5-1 at 20).

Relying on this language, United Fire contends coverage for Ball's and Lewis's claims is barred because their exposure to the epoxies was the result of a "discharge, dispersal, seepage, migration, release or escape" of "irritant or contaminant" "chemicals" (i.e., the epoxies) onto their bodies.  (Doc. 9 at 32–39.)  United Fire's attempt to broadly characterize Ball's and Lewis's application of epoxies as "pollution" stretches the boundaries and bears no relationship to Swank's or T&L's reasonable expectations related to coverage.

United Fire relies principally on a case from the Eastern District of Virginia—

*Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779

(E.D. Va. 2007)—but it ignores decisions from this Court and the Ninth

Circuit that reject its broad reading of the pollution exclusion.  *See, e.g.*,

*Enron Oil Trading & Transp. Co. v. Underwriters of Llyod's of London*, 47 F.

Supp. 2d 1152 (D. Mont. 1996), *affirmed in part, reversed in part*, *Enron Oil

Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526 (9th Cir. 1997).

In *Enron*, Judge Hatfield was asked to decide whether Enron's injection

of a foreign substance, so-called "B-G mix," into a pipeline carrying crude oil

constituted "pollution" under a pollution exclusion.  Enron's insurer argued it

did and that coverage was barred for the claims against Enron.  The Court

rejected the insurer's arguments, concluding the insurer was interpreting the

pollution exclusion far too broadly.

In reaching its decision, the Court explained the need for a "common

sense approach" to interpreting terms like "pollution," "contamination," and

"irritant."  *See generally*, 47 F. Supp. 2d at 1161–64.  After examining case law

from several jurisdictions, the Court adopted the reasoning of the Seventh

Circuit:

> The terms "irritant" and "contamination", when viewed in
> isolation, are virtually boundless, for "there is no substance or
> chemical in existence that would not irritate or damage some
> person or property." *Westchester Fire Ins. Co. v. City of*

*Pittsburg, Kan.*, 768 F. Supp. 1463, 1470 (D. Kan. 1991).  Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool.  Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Enron*, 47 F. Supp. 2d at 1164 (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992)).

As the Court succinctly explained, the danger in adopting a broad reading of the pollution exclusion—precisely the reading United Fire argues for in this case—is that its reach would be "virtually boundless."  *Id.*  The chlorine pool example in the quote above is an "absurd" example that is virtually indistinguishable from the facts in this case.  In both that example and this case, a chemical skin irritant being put to its intended use would constitute an excluded "pollutant."  More directly, the *Pipefitters* court explained, "There is nothing unusual about paint peeling off a wall, asbestos particles escaping during the installation or removal of insulation, <u>or paint drifting off the mark during a spraypainting job</u>."  (*Id.* at 1164 (quoting *Pipefitters*, 976 F.2d at 1044).)  But no "reasonable policyholder" would

"characterize such routine incidents as pollution." *Id.* at 1164 (quoting

*Pipefitters*, 976 F.2d at 1044).

The Ninth Circuit affirmed this Court's "common sense" interpretation

of the pollution exclusion. *See Enron*, 132 F.3d 526.[6] The court agreed that a

broad reading of the pollution exclusion would result in limitless, unintended

exclusions:

> The insurers' argument demonstrates the ambiguity
> convincingly; under their interpretation, the exclusion would be
> virtually limitless, extending to claims for product liability (for
> example, a bottle manufactured with impure glass) or for
> negligence (for example, spoilt food served in a restaurant) that
> arguably involved an impurity resulting from contact with a
> foreign substance.

*Id.* at 530; *see also id.* at 531 ("'clearly, this [pollution exclusion] clause

cannot be read literally as it would negate virtually all coverage.'" (quoting

*Am. Sts. Ins. Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind. 1996)).

The Ninth Circuit further explained that even if the pollution exclusion

could be interpreted broadly—just as United Fire suggests in this case—the

"objectively reasonable expectations" of the insureds must be "honored." *Id.*

at 530–31. The court concluded that "Montana courts would hold that the

pollution exclusion does not bar coverage of the claimed loss." *Id.* at 530.

---

[6] The Ninth Circuit reversed and remanded a separate ruling regarding
dismissal based on an intentional acts exclusion, *see* 132 F.3d at 528–529, but
that had no bearing on the court's discussion of the pollution exclusion.

26

The objectively reasonable expectation is that pollution exclusions "unmistakabl[y] . . . deal[ ] with environmental-type harms." *Id.* The court concluded by pointing to decisions from several other jurisdictions who reached the same conclusion based on the history and development of the pollution exclusions. *Id.* at 531 (collecting cases).

In *Sokoloski*, one of the cases United Fire points to, the Montana Supreme Court concluded a claim for smoke damage was excluded because the pollution exclusion explicitly excluded coverage for damage from "smoke." 980 P.2d 1042. The Montana Supreme Court distinguished *Enron* in light of that specific reference to "smoke." *Id.* at 1044–45. This case, however, is even further distinguishable from *Sokoloski*. The definition of "pollutant" in the United Fire Policy broadly includes any "solid, liquid, [or gas]" that could be an "irritant" or "contaminant." Such a broad definition would lead precisely to the same absurd results this Court and the Ninth Circuit identified and rejected in *Enron*. For instance, the exclusion, as United Fire reads it, would bar coverage for any motor vehicle accident where a person is injured by any physical object (e.g., a "solid, liquid, [or gas]") such as a shattered windshield, a steering wheel, or spilled gasoline, because each of those objects would presumably "irritate" (and potentially "contaminate") the

injured person's body.  More generally, though, the exclusion would bar coverage for literally <u>any</u> bodily injury caused by any "solid, liquid, [or gas]."

The courts have rejected United Fire's reading of the pollution exclusion for good reason.  Interpreting the pollution exclusion as broadly as United Fire requests would result in "boundless," "limitless," and unintended exclusions.  Certainly, it was not Swank's expectation that T&L's use of epoxies in the course of its work at the Project would constitute "pollution." (Ex. B at ¶ 12.)

For the reasons above, the Court should conclude the Total Pollution Exclusion does not bar coverage.  At a minimum, however, there is an evident ambiguity in terms of what constitutes a "pollutant," and that ambiguity must be "narrowly and strictly construed" against United Fire.  *See Revelation Indus. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

## CONCLUSION

Swank respectfully requests that the Court deny United Fire's Motion for Judgment on the Pleadings.  When the facts, the Subcontract, and Policy are construed in Swank's favor, as they must, Swank is entitled to coverage and has asserted a valid claim in that regard.

DATED this 9th day of January 2020.

           /s/ Randy J. Tanner
           Scott M. Stearns
           Randy J. Tanner
           BOONE KARLBERG P.C.
           *Attorneys for Swank Enterprises, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing Response Brief is double-spaced, 14-point Georgia font, and contains approximately 6145 words, excluding the Caption and Certificate of Compliance.

DATED this 9th day of January 2020.

       /s/ Randy J. Tanner
      Scott M. Stearns
      Randy J. Tanner
      BOONE KARLBERG P.C.
      *Attorneys for Swank Enterprises, Inc.*