IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| SWANK ENTERPRISES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED FIRE AND CASUALTY COMPANY (d/b/a UNITED FIRE GROUP) and John Does 1-10, <br><br> Defendants. | CV 19–179–M–DWM <br><br> OPINION and ORDER |

This is a coverage dispute arising out of injuries sustained by employees of a subcontractor during the 2015 construction of the Butte-Silverbow Metro Wastewater Treatment Plant in Butte, Montana ("the Project"). (*See* Doc. 1.) Plaintiff Swank Enterprises, Inc. was the general contractor, (*id.* at ¶ 6), and hired T&L Painting, Inc. as a subcontractor, (*id.* at ¶ 7). In June 2018, two T&L employees filed suit in state court against Swank and Tnemec Company, Inc., an epoxy manufacturer, alleging injury through exposure to chemicals contained in the coatings they applied at the Project (collectively, "the Underlying Cases"). (*Id.* at ¶ 11.) At the time, T&L was insured by Defendant United Fire and Casualty Company. (*Id.* at ¶ 8.) Swank tendered the Underlying Cases to United Fire for defense and indemnity, insisting Swank was an additional insured under T&L's

1

Policy. (*Id.* at ¶ 13.) United Fire rejected the tender, (*id.* at ¶ 14), resulting in the present lawsuit. United Fire seeks a judgment on the pleadings that it does not owe a duty to defend or indemnify Swank as an additional insured under T&L's Policy. (Doc. 8.) That motion is granted because even assuming Swank is an additional insured, which is a close question, the policy's pollution exclusion bars coverage.

**LEGAL STANDARD**

**I.     Rule 12(c)**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, assuming the truth of the allegations in the non-moving party's pleadings, the moving party is entitled to judgment as a matter of law." *Rubin v. United States*, 904 F.3d 1081, 1083 (9th Cir. 2018). As with a motion under Rule 12(b)(6), a successful Rule 12(c) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**II.     Materials under Consideration**

The determination of a Rule 12(c) motion is limited to the pleadings. *See* Fed. R. Civ. P. 12(d); *see also* Fed. R. Civ. P. 10(c). "A court may, however,

2

consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Relevant here, there are 14 documents submitted for consideration. They are discussed in turn.

## A. Attached to the Pleadings

Attached to Swank's Complaint are the complaints in the Underlying Cases, (Doc. 1-1), and Swank's answer in the Underlying Cases, (Doc. 1-2). These documents are incorporated by reference, *Ritchie*, 342 F.3d at 908, and judicially noticed, *see* Fed. R. Evid. 201. United Fire attached T&L's Policy to its Answer, (Doc. 5-1), which is incorporated by reference. *See Ritchie*, 342 F.3d at 908 (clarifying that "[t]he defendant may offer such a document").

## B. Attached to United Fire's Brief in Support

There are three documents attached to United Fire's brief in support of its Rule 12(c) motion: the subcontractor agreement between Swank and T&L, (Doc. 9-1); the "Certificate of Liability Insurance" issued by T&L's local insurance broker, (Doc. 9-2); and an order entered by the Montana Thirteenth Judicial District Court, Yellowstone County in *Farmers Insurance Exchange et al., v. Green et al.*, Cause No. DV 17-1456 (Jan. 29, 2019), (Doc. 9-3). According to Swank, the Subcontractor Agreement provided at Doc. 9-1 is incomplete. (*See*

Doc. 12 at 5 n.1.) A full copy of the document is included as Doc. 12-1. Additionally, the Certificate attached at Doc. 9-2 is not for the correct project. (*Compare* Doc. 9-2 (describing "Basin Creek WTP") *with* Doc. 12-1 at 35 (describing "Butte WWTP Phase 2"); *see* Doc. 12 at 16.) Therefore, the Court does not rely on either Docs. 9-1 or 9-2; however, the *Farmers* decision at Doc. 9-3 is judicially noticed. *See* Fed. R. Evid. 201.

    **C.**     **Attached to Swank's Response**

There are eight documents attached to Swank's response. The first is a compilation of the subcontractor documents, which includes what Swank alleges is a more complete version of the Subcontractor Agreement than Doc. 9-1. (*See* Doc. 12-1.) It is incorporated by reference. *Ritchie*, 342 F.3d at 908. The second document is an affidavit from Swank's Safety Director and an additional copy of the Subcontractor Agreement. (Doc. 12-2.) The affidavit may not be considered on a Rule 12(c) motion and the attached Agreement is duplicative. Doc. 12-2 is not considered. The third through seventh documents relate to the procedural posture and discovery in the Underlying Cases. (Docs. 12-3, 12-4, 12-5, 12-6, 12-7.) Though the existence of these documents is subject to judicial notice, *see* Fed. R. Evid. 201, their content is not. But Swank appears to rely on them solely to establish the procedural posture of the Underlying Cases, *not* for their content. (*See* Doc. 12 at 7.) They are noticed for that limited purpose.

The eighth document is a compilation of documents including various letters between the parties related to Swank's tender of the claim to United Fire in 2019. (Doc. 12-8.) The proffer of these documents pushes the boundaries of a Rule 12(c) motion. And, many of them are duplicative of documents already in the record. The letters and extrinsic materials relating to the tender of the defense to United Fire (excluding those that have already been incorporated or noticed as discussed above) do not qualify under Rule 12(c). The Court therefore did not consider Doc. 12-8 in resolving the present motion.

### D. Documents Considered

Ultimately, the following documents were considered:

- Underlying Complaints (Docs. 1-1, 1-2);
- T&L's Policy (Doc. 5-1);
- *Farmers* Order (Doc. 9-3);
- Subcontractor Agreement and Attachments (Doc. 12-1); and
- Service and Discovery Documents for Underlying Cases (Docs. 12-3, 12-4, 12-5, 12-6, 12-7), but only for existence, not content.

### ANALYSIS

As the party seeking coverage, Swank "bears the initial burden to establish that the claim falls within the basic scope of coverage," *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461 (Mont. 2016), including showing its status as an additional insured, *WBI Energy Transmission, Inc. v. Colony Ins. Co.*, 56 F. Supp. 3d 1194, 1197 (D. Mont. 2014) (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005)). Whether a defense is owed "is

determined by the language of the insurance policy." *Lloyd A. Twite Family P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1158 (Mont. 2008). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). But if there is "no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005) (internal quotation marked omitted). United Fire argues it has no duty to defend—and thus indemnify—because Swank is not an additional insured under T&L's Policy and, alternatively, that the Policy's Total Pollution Exclusion precludes coverage.

## I. Additional Insured

Pursuant to the Subcontractor's Agreement, T&L agreed to indemnify Swank for all claims for bodily injury and property damage related to the Project, (§ 9.1, Doc. 12-1 at 21), and name Swank as an additional insured on T&L's Policy "with respect to liability for bodily injury, property damage or personal and advertising injury to the extent caused by the negligent acts or omissions of [T&L], or those acting on [T&L]'s behalf, in the performance of Subcontract Work for Contractor at the Project site," (§ 9.2.11.1, *id.* at 23). T&L, as required by the Agreement, (*see id.*), provided Swank with a "Certificate of Liability Insurance" produced by Cogswell Insurance Agency LLC on August 18, 2014, (*id.* at 35).

6

The Certificate identifies Swank as the "Certificate Holder" but advises in bold language across the top:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

(*Id.*) The Certificate also includes an attachment of "[a]dditional insured endorsements" specific to the relationship between T&L and Swank. (*Id.* at 36.) However, Swank was not added to the Schedule of Additional Insureds included in T&L's Policy. (*See* Doc. 5-1 at 4.)

### A. Applicable Endorsements

T&L's Policy includes four additional insured endorsements:

CG 71 31 02 15: Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsement, (*id.* at 36);

CG 20 11 04 13: Additional Insured – Managers of Lessors of Premises Endorsement, (*id.* at 101);

CG 71 50 02 15: Contractors Blanket Additional Insured – Limited Products – Completed Operations Coverage Endorsement, (*id.* at 37); and

CG 71 51 02 15: Broadened Liability Plus Endorsement, (*id.* at 38–48).

7

Because the first two endorsements require that the additional insured be "shown in the Schedule [of Additional Insureds]," (*id.* at 36, 101), and Swank is not listed on that Schedule, (*id.* at 4), United Fire argues only the second two endorsements apply. Swank, on the other hand, insists a genuine issue of material fact exists as to whether United Fire should have listed Swank in the Schedule but wrongfully failed to do so. The Montana Supreme Court has directly addressed this issue in United Fire's favor. *Plum Creek Mktg., Inc. v. Am. Econ. Ins. Co.*, 214 P.3d 1238, 1248 (Mont. 2009). The action, as currently pled, is therefore limited to consideration of T&L's Policy as issued, which does not list Swank as a Scheduled Additional Insured. Thus, only the second two endorsements apply.

### B. Scope of Coverage

Under the two remaining endorsements, United Fire argues that Swank, as an additional insured, is covered by T&L's Policy only to the extent that T&L is liable for wrongdoing and that liability can be imputed to Swank. (*See* Doc. 5-1 at 37, 42.) In response, Swank argues that the Subcontractor's Agreement broadened the scope of coverage. Contrary to Swank's position, "[a]n insurer's duty to defend or indemnify . . . depends on the four corners of the invoked insurance policy—not on an agreement between an insured and a third party." *F.H. Stoltze Land & Lumber Co. v. Am. Sts. Ins. Co.*, 352 P.3d 612, 615 (Mont. 2015). And, the endorsement language that limits coverage under T&L's Policy to that

8

contracted to by the parties, (*see* Doc. 5-1 at 37, 42), cannot reasonably be read to broaden coverage beyond those four corners. *Cf. Stillwater Condo. Ass'n v. Am. Home Assur. Co.*, 508 F. Supp. 1075, 1079 (D. Mont. 1981) (explaining that exclusionary language does not grant coverage). Nor can the Certificate of Insurance. (Doc. 12-1 at 35); *Seal v. Hart*, 50 P.3d 522, 529 (Mont. 2002). Swank's reliance on the policy amendments section is also unavailing. That section purports to amend the additional insured endorsements to state: "coverage to the additional insured will be afforded to the extent permissible by law and to the extent the named insured is required by the contract or agreement to provide insurance for the additional insured." (Doc. 5-1 at 82.) However, that amendment only applies to certain enumerated endorsements, which does not include the two at issue here. (*See id.* at 82–83.) Though Swank argues this raises an ambiguity in the policy, the existence of the amendment actually clarifies that the absence of such language in the applicable endorsements was purposeful.

While Swank may have a claim against either T&L or United Fire regarding the scope of the insurance that was actually obtained, that dispute is not relevant to the coverage provided under the four corners of T&L's Policy.

### C. T&L's Liability

Pursuant to the applicable additional insured endorsements, Swank's coverage under T&L's Policy is limited to the extent that T&L's liability can be

9

imputed to Swank. United Fire argues that Swank cannot make such a showing because: (1) the Underlying Cases do not allege liability against T&L and (2) T&L is immune from such actions under the exclusivity provision of the Workers' Compensation Act, Mont. Code Ann. § 39–71–411.

To support its reading of the additional insured endorsements, United Fire turns to *Plum Creek* and *F.H. Stoltze*. In both cases, a subcontractor was required to obtain additional insured coverage for a primary contractor; an injured employee of the subcontractor sued the contractor; the subcontractor's insurer denied defense and indemnity pursuant to a liability plus endorsement that limited coverage to situations where the subcontractor could be "held liable"; and the Montana Supreme Court agreed with the insurer. *Plum Creek*, 214 P.3d at 1240–42; *F.H. Stoltze*, 352 P.3d at 613–14. It appears, however, that this case is distinguishable. First, the Underlying Cases allege liability for injuries caused, at least in part, by an entity allegedly acting on T&L's behalf, specifically Tnemec Corp. (*See* Doc. 1-1 at 4.) Second, the policy language from *Plum Creek* and *F.H. Stoltze* is narrower, providing that the additional insured "is an insured only to the extent [the named insured] is *held liable* due to" work performed under the subcontract. *See Plum Creek*, 214 P.3d at 1241–42 (emphasis added). Here, however, the policy merely uses the term "your liability." This distinction also impacts exclusivity under the Montana's Workers' Compensation Act.

10

The Act "generally provides the exclusive remedy for an employee who suffers an injury in the scope of his or her employment." *Wise v. CNH Am., LLC*, 142 P.3d 774, 776 (Mont. 2006). Accordingly, United Fire argues that liability cannot be established under the endorsement because T&L is immune. But legal immunity is different from causal responsibility. *See Graham Constr., Inc. v. Markel Am. Ins. Co.*, 180 F. Supp. 3d 626, 637 (D. Neb. 2016). While the language "held liable" unambiguously has a legal connotation, *see Graham Constr., Inc.*, 180 F. Supp. 3d at 638; *Columbia River Rentals, LLC v. Phillips*, 2009 WL 632933, at *7 (D. Or. Jan. 14, 2009), *report & recommendation adopted*, 2009 WL 598014 (D. Or. Mar. 6, 2009), here the policy simply states "your liability." Because "your liability" could reasonably be interpreted to mean either causal responsibility or legal liability, it is ambiguous and must be construed in favor of coverage. *Ribi*, 108 P.3d at 474. Thus, immunity under the Workers' Compensation Act does not necessarily bar T&L from being found responsible.

But even assuming that Swank is an additional insured, the Total Pollution Exclusion bars coverage.

## II.  Total Pollution Exclusion

As the insurer, United Fire has the burden to show an exclusion bars coverage. *Id.* at 476. Pursuant to the Total Pollution Exclusion, T&L's Policy does not apply to "'[b]odily injury' or 'property damage' which would not have

11

occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (Doc. 5-1 at 25.) "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (*Id.* at 20.)

The parties' arguments reflect the two approaches courts have taken to interpreting the Total Pollution Exclusion. "Some courts apply the exclusion literally because they find the terms to be clear and unambiguous." *Apana v. TIG Ins. Co.*, 574 F.3d 679, 682 (9th Cir. 2009) (collecting cases). "Other courts have limited the exclusion to situations involving traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find that the exclusion contradicts policyholders' reasonable expectations." *Id.* at 682–83 (collecting cases). Montana falls into the former category. *Id.* at 682 (citing *Sokoloski v. Am. W. Ins. Co.*, 980 P.2d 1043, 1044–45 (Mont. 1999)).[1]

In arguing that the exclusion does not apply, Swank relies on the Ninth Circuit's interpretation of Montana law in *Enron Oil Trading & Transportation Co. v. Walbrook Insurance Co.*, 132 F.3d 526 (9th Cir. 1997). In *Enron*, an oil company alleged injury resulting from explosions and malfunctions caused by the

---

[1] Note that *Sokoloski* is most often cited for its discussion of the "sudden and accidental" language; such language is not at issue here.

injection of foreign substances into a pipeline carrying its crude oil. *Id.* at 528. The insurance policy at issue included a pollution exclusion that used the undefined term "contamination." *Id.* at 529–30. The Ninth Circuit concluded that the exclusion was ambiguous and could be reasonably read to limit its application "to only those hazards traditionally associated with environmental pollution." *Id.* at 531 (internal quotation marks omitted). But two years later, the Montana Supreme Court decided *Sokoloski*, which involved a homeowner's claim for smoke and soot damage caused by scented candles. 980 P.2d at 1044. Unlike the *Enron* policy, the *Sokoloski* policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* (emphasis omitted). Specifically distinguishing *Enron*, the Court determined that the "smoke and soot damages were expressly included within the policy definition of 'pollutants'" and there was no reason to look beyond the policy for further interpretation. *Id.* at 1044–45. Coverage was therefore properly denied. *Id.* at 1046.

*Sokoloski*, not *Enron*, controls the outcome here because T&L's Policy explicitly defines "pollutants," to include "chemicals," (Doc. 5-1 at 20), which unambiguously includes the epoxies used at the Project site, (*see* Doc. 1-1 at 3–4). *See Firemen's Ins. Co. of Wash., D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 791, 799 (E.D. Va. 2007) (concluding that pollution exclusion

13

barred coverage for fumes released by an epoxy/urethane sealant). Though an ambiguity exists where a policy when taken as a whole is reasonably is subject to two different interpretations, "[c]ourts should not . . . seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Ribi*, 108 P.3d at 476 (internal quotation marks omitted). This exclusion unambiguously bars coverage.

## Conclusion

Even if Swank is entitled to coverage as an additional insured under T&L's Policy, coverage is excluded under the Total Pollution Exclusion. Because there is no possibility of coverage, United Fire owes neither a duty to defend nor indemnify.

Accordingly, IT IS ORDERED that United Fire's motion for judgment on the pleadings (Doc. 8) is GRANTED. The Clerk is directed to enter judgment consistent with this Order and close the case.

DATED this  7th   day of April, 2020.

_____  12:00 PM
Donald W. Molloy, District Judge
United States District Court